TM:RJN
F.#2011R00633

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

**M 12- 046**

UNITED STATES OF AMERICA

    - against -

LULZIM KUPA,
    also known as "Luzi,"

          Defendant.

AFFIDAVIT IN SUPPORT
OF ARREST WARRANT
(21 U.S.C. §§ 846 and
841(b)(1)(A)(ii)(II);
18 U.S.C. § 1029(a)(1)
and (b)(2))

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        FRANK ADAMO, being duly sworn, deposes and says that he

is a Special Agent with the Drug Enforcement Administration, duly

appointed according to law and acting as such.

        Upon information and belief, in or about and between

2005 and 2011, within the Eastern District of New York and

elsewhere, the defendant, LULZIM KUPA, also known as "Luzi,"

together with others, did knowingly and intentionally conspire to

possess with intent to distribute a controlled substance, which

offense involved over five kilograms of cocaine, a schedule II

controlled substance, contrary to 21 U.S.C. § 841(a)(1).

        (Title 21, United States Code, Sections 846 and

841(b)(1)(A)(ii)(II))

        Upon information and belief, in or about and between

2010 and 2011, within the Eastern District of New York and

elsewhere, the defendant, LULZIM KUPA, also known as "Luzi,"

together with others, did knowingly and with intent to defraud
conspire to produce, use and traffic in one or more unauthorized
devices: to wit, counterfeit credit cards, contrary to 18 U.S.C.
§ 1029(a)(1).

(Title 18, United States Code, Sections 1029(a)(1) and
1029(b)(2))

The source of your deponent's information and the
grounds for his belief are as follows:[1]

1.    I am a Special Agent with the Drug Enforcement
Administration ("DEA"). I have been a Special Agent with the DEA
for approximately thirteen years. I am currently assigned to a
DEA squad that investigates, among others, members and associates
of the organized crime families of La Cosa Nostra ("LCN"),
including their involvement in drug trafficking and drug-related
homicides, and other associated illegal activities. During my
tenure with the DEA, I have participated in investigations that
have included, among other investigative techniques, the use of
physical surveillance, execution of search warrants, consensual
recordings of individuals associated with narcotics trafficking
and other criminal activities, and debriefings of confidential
sources and cooperating witnesses. Through my training,
education and experience, I have become familiar with narcotics

---

[1]    Because the purpose of this Affidavit is to state only
probable cause to arrest, I have not described all the relevant
facts and circumstances of which I am aware.

2

trafficking and other criminal activities and the efforts of persons involved in such activities to avoid detection by law enforcement.

2. I have participated in the investigation of the offenses described herein. As part of the investigation, I have conducted interviews of cooperating witnesses, reviewed reports of debriefings of witnesses by other law enforcement personnel, and reviewed reports by other investigative agencies. The statements contained in this affidavit are based, in part, on information provided by Special Agents of the DEA, other law enforcement personnel, confidential informants, cooperating witnesses and are also based on my experience and background as a Special Agent. All statements are provided in sum and substance and in part.

3. Among other duties, I have been participating in an investigation relating to the criminal activities of LULZIM KUPA and his coconspirators. As discussed below, the investigation has revealed that, among his criminal activities, KUPA is involved in (1) the distribution of cocaine in Staten Island, New York, and elsewhere and (2) the use and distribution of fraudulent access devices such as counterfeit credit cards in Staten Island, New York, and elsewhere.

3

## CRIMINAL HISTORY OF THE DEFENDANT

4.     Based upon a review of law enforcement databases, including criminal history databases, LULZIM KUPA is a 35 year-old white male, who resides in Connecticut.  On September 8, 1995, KUPA was arrested in Staten Island, New York, on charges including criminal possession of a bomb, silencer or machine gun. He pled guilty on April 25, 1996, to criminal possession of a weapon in the fourth degree and was sentenced to three years of probation.  On July 30, 1998, KUPA was indicted in the United States District Court, Southern District of New York, for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, the use of counterfeit securities, in violation of 18 U.S.C. § 513 and bank fraud, in violation of 18 U.S.C. § 1344. United States v. Lulzim Kupa, 98 CR 828 (JSM).  Kupa pled guilty to conspiracy to defraud the United States, and, on November 23, 1999, KUPA was sentenced to 18 months of incarceration and three years of supervised released.  On February 25, 1999, KUPA was indicted in the United States District Court, Eastern District of New York, for charges including racketeering, in violation of 18 U.S.C. § 1962(c), based on his involvement in a series of bank burglaries in which approximately $1,048,182 was stolen.  United States v. Lulzim Kupa, 99 CR 160 (BMC).  He pled guilty on August 19, 1999 and was sentenced on December 8, 1999 to 24 months' incarceration, to run concurrently with the

4

sentence he was serving pursuant to his conviction in the Southern District of New York.  On December 16, 1999, KUPA was indicted in a separate case in the United States District Court, Eastern District of New York, for conspiracy to distribute marijuana.  <u>United States v. Lulzim Kupa</u>, 99 CR 1146 (CPS).  On December 12, 2000, he was sentenced to 63 months of incarceration, to run concurrently with is other federal sentences and four years of supervised release.  He was released from prison in approximately September 2003.  On December 12, 2006, KUPA was indicted in the United States District Court, Eastern District of New York for conspiracy to distribute marijuana.  <u>United States v. Lulzim Kupa</u>, 06 CR 816 (BMC).  He was sentenced on July 26, 2007 to 30 months' incarceration.  In addition, because this offense violated the terms of the supervised release imposed pursuant to his prior conviction, KUPA was sentenced to an additional 24 months' in prison for the violation.  He was released on January 11, 2010.

## COCAINE DISTRIBUTION

5.     A Cooperating Witness ("CW")[2] has advised that he
has been involved with Keith Levine ("Levine"), Joseph Sclafani
("Sclafani") and others in the distribution of marijuana
cultivated in several growing operations in Staten Island, New
York between approximately 2001 and 2011.  In addition, CW has
advised that he was involved, with various individuals, in the
distribution of cocaine in Staten Island, New York, over that
time period.  Between approximately 2008 and 2011, CW was
involved in cocaine distribution in Staten Island with Afrim Kupa
("Kupa"), Neil Lombardo ("Lombardo"), Sclafani and others.[3]

---

[2]     CW has pled guilty pursuant to a cooperation agreement
to an information charging him with his participation in
marijuana and cocaine distribution, in violation of 21 U.S.C.
§§ 846, 841(a)(1), 841(b)(1)(A)(ii)(II) and 841(b)(1)(A)(vii).
CW is cooperating with the government in the hopes of obtaining
leniency at sentencing and possible entry into the Witness
Security Program.  Information provided by CW has been
corroborated by other sources of information, including but not
limited to, consensual recordings, surveillance, documents, and
information provided by other confidential sources and
cooperating witnesses.

[3]     In April 2011, Levine was indicted by a grand jury in
the United States District Court, Eastern District of New York,
for distribution and possession with intent to distribute
marijuana and for conspiracy to distribute and possess with
intent to distribute marijuana, in violation of 21 U.S.C.
§§ 841(a), 841(b)(1)(A)(vii) and 846.  In September 2011, Kupa,
Lombardo and Sclafani were charged in a superseding indictment in
the case pending against Levine with distribution and possession
with intent to distribute five kilograms or more of cocaine, in
violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(II)(ii), and
conspiracy to distribute and possess with intent to distribute
five kilograms or more of cocaine, in violation of 21 U.S.C.
§ 846.  In addition, Sclafani was charged with Levine with

Together, Lombardo, Sclafani and CW distributed between four to eight kilograms of cocaine a month.

    6.    CW advised that several years after he began distributing drugs with Sclafani and Lombardo, Sclafani was arrested for violating the terms of his supervised release imposed pursuant to previous conviction.[4]  In approximately 2010, just prior to Sclafani's incarceration for the violation of supervised release, Sclafani directed CW to continue the cocaine distribution operation during Sclafani's incarceration and to service Sclafani's cocaine customers.  Sclafani directed CW to meet directly with Lombardo, their supplier.  However, Sclafani also instructed L. KUPA to supply cocaine to CW if CW needed additional cocaine to sell to their customers during Sclafani's incarceration.  Between approximately 2010 and 2011, CW purchased

---

distribution and possession with intent to distribute over 1,000 marijuana plants, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(vii), and conspiracy to distribute and possess with intent to distribute over 1,000 marijuana plants, in violation of 12 U.S.C. § 846.  United States v. Afrim Kupa, Keith Levine, Neil Lombardo and Joseph Sclafani, 11 CR 345 (SLT).

[4]    On December 2, 1999, in United States v. Joseph Sclafani, 99 CR 1146 (ARR), Sclafani was charged in the United States District Court for the Eastern District of New York with racketeering, involving predicate acts of narcotics trafficking and bank fraud.  He pled guilty on July 24, 2000, and was sentenced to 97 months' incarceration and four years of supervised release.  He was charged with violating the terms of his supervised release after he was stopped by Kansas State Police on May 2, 2009, and found to be traveling with 15 cell phones and over $100,000, much of which was hidden in a false compartment in the rear bumper of the car.  On January 1, 2010, he was sentenced to one year in prison for the violation.

7

between five and ten kilograms of cocaine from L. KUPA and L.
KUPA's coconspirators. CW advised that L. KUPA worked
particularly closely with and provided direction to one
coconspirator ("CC1"), and CW communicated primarily with L. KUPA
and CC1 regarding the cocaine transactions referenced above.

      7.    Between the time that Sclafani was incarcerated
for his violation of supervised release and the time Sclafani was
released in early 2011, CW received at least five deliveries of
cocaine from L. KUPA and CC1, which CW sold to the customers of
the drug distribution operation in which CW and Sclafani were
involved. CW advised that, through discussions with L. KUPA and
L. KUPA's coconspirators, including CC1, CW understood that L.
KUPA and his coconspirators shipped the cocaine to New York from
California via mail services such as Federal Express or UPS.
When CW wanted to purchased cocaine, he spoke to L. KUPA over the
phone to discuss how much cocaine CW needed and when L. KUPA was
expecting a cocaine shipment in the mail. L. KUPA used only
prepaid cell phones to communicate with CW, and L. KUPA
frequently changed his phones to avoid detection by law
enforcement. After L. KUPA received the cocaine in the mail, it
was delivered to CW's house, usually by CC1. The highest
quantity that CW received per delivery was between two to three
kilograms of cocaine, and the lowest he received was one kilogram
of pure cocaine.

8.     In approximately August 2011, CW was advised by Sclafani that L. KUPA, CC1 and their coconspirators were expecting delivery by mail of between seven and ten kilograms of cocaine.  However, the individual expected to sign for the delivery of the package or packages containing the cocaine was not present when the shipment arrived, and the package or packages were sent back to California.[5]

9.     The information provided by CW is corroborated by information provided by another coconspirator ("CS").[6]  CS advised that between approximately 2001 and 2011, he was involved in the distribution of marijuana and cocaine in Staten Island, New York.  Although CS had other cocaine suppliers, he advised

---

[5]     CW recorded at least one conversation in which this topic was discussed with Sclafani, but Sclafani whispered during portions of it, making it difficult to hear.  However, Sclafani does audibly refer to "two things that went back," which, based on my training and experience and my debriefing of CW, I understand to refer to the shipments that were returned to California.

[6]     CS was recently arrested by the DEA pursuant to a complaint that charged him with his participation in marijuana and cocaine distribution, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii)(II) and 841(b)(1)(A)(vii).  CS has agreed to be debriefed about his knowledge of criminal activities and to consensually record others engaging in criminal conduct.  CS is in a position to testify but has not yet signed an agreement to testify.  CS is seeking to cooperate with the government in the hopes of obtaining leniency at sentencing and possible entry into the Witness Security Program.  Information provided by CS has been corroborated by other sources of information, including but not limited to, consensual recordings, documents and information provided by other confidential sources and cooperating witnesses.

that in approximately 2005, he purchased one kilogram of cocaine from L. KUPA and CC1 for about $19,000. Subsequently, CS relied upon CW and Sclafani as his primary sources for cocaine. CW advised CS that Sclafani directed L. KUPA not to sell to CW's and Sclafani's customers because Sclafani feared L. KUPA would offer a lower price. However, CS advised that while Sclafani was incarcerated in 2011, L. KUPA offered to sell CS a kilogram of cocaine, which CS purchased. The cocaine was delivered to CS by CC1. CS further advised that he knew from discussions with L. KUPA and L. KUPA's coconspirators, including CC1, that the cocaine was shipped to them through the mail. Specifically, CS understood that the cocaine was shipped to individuals working as doormen in buildings in New York City, who were paid to sign for the packages.

<u>ACCESS DEVICE FRAUD</u>

10. In addition to his involvement in the distribution of narcotics, CW and CS have advised that L. KUPA and his coconspirators, including CC1, engaged in a credit card fraud scheme. CW advised that in approximately 2010, CC1 purchased a machine that he used to make fraudulent credit cards. CW purchased two cards from L. KUPA, which he gave to one of Sclafani's cocaine customers. When the customer advised that the cards did not work, CW asked L. KUPA whether he had any more

10

credit cards to sell, but L. KUPA advised that the machine used to make the cards had broken.

11. Similarly, CS advised that in approximately December 2010, he learned from L. KUPA and his coconspirators, including CC1, that they used a machine to make fraudulent credit cards. CS purchased a gift card from CC1 that CS understood was purchased with one of the fraudulent credit cards that L. KUPA, CC1 and their coconspirators produced. In addition, around the same time period, CC1 delivered an iPad computer purchased with a fraudulent credit card to CS, in the hopes that CS could sell it. When CS advised he was not able to sell the computer, L. KUPA advised CS that he could keep the iPad as a gift.

12. On August 10, 2011, while agents were executing a search warrant at A. Kupa's residence, pursuant to a search warrant obtained in the United States District Court, Eastern District of New York, CC1 arrived at A. Kupa's residence in his car. CC1 gave agents his consent to search his car, and they recovered a large sum of cash wrapped in a manner, which, based on my training and experience, was consistent with the proceeds of narcotics trafficking. They also observed, but did not seize, equipment for the production of fraudulent or counterfeit credit cards.

WHEREFORE, your deponent respectfully requests that a warrant be issued for the arrest of the defendant LULZIM KUPA,

11

also known as "Luzi," so that he may be dealt with according to law.  I further request that this affidavit and the arrest warrant be filed under seal as disclosure of this application would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, such as CW or CS, change patterns of behavior, notify confederates and flee from or evade prosecution.

Dated:     Brooklyn, New York
           January 13, 2012

                                    _____
                                    FRANK ADAMO
                                    Special Agent
                                    Drug Enforcement Administration

Sworn to before me this
13 day of January, 2012


_____
THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK