

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:RJN                              *271 Cadman Plaza East*
F.#2011R00633                      *Brooklyn, New York 11201*


February 1, 2012


<u>By Fax and ECF</u>

The Honorable Marilyn D. Go
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

            Re:  <u>United States v. Lulzim Kupa</u>
                 <u>Criminal Docket No. 12 M 00046</u>

Dear Judge Go:

        The government respectfully submits this letter in
advance of the defendant's bail hearing, scheduled for February
2, 2012 at 11:00 am.  The defendant, Lulzim Kupa ("L. Kupa"), was
a member of a large-scale cocaine distribution conspiracy between
approximately 2005 and 2012.  Under the law, the defendant is
presumed to be a danger to the community and a flight risk.  It
is his burden to rebut this presumption.  Although defense
counsel has advised the government that he intends to offer a
substantial bail package, in light of the factors set forth
below, the government respectfully submits that the defendant
cannot overcome this presumption and should continue to be
detained pending trial.

I.   <u>Summary of the Charges</u>

        On January 16, 2012, the defendant was arrested
pursuant to an arrest warrant authorized by the Honorable Ramon
E. Reyes on or about January 13, 2012, that charged him with
conspiracy to distribute over five kilograms of cocaine, in
violation of 21 U.S.C. § 846 and with access device fraud, in
violation of 18 U.S.C. § 1029(a)(1).  The government respectfully
refers the Court to the affidavit in support of the arrest
warrant ("Arrest Warrant"), attached as Exhibit A, for a more
detailed description of the defendant's involvement in these
offenses.

        To summarize, between 2005 and 2011, L. Kupa was
involved in the distribution of over five kilograms of cocaine

with coconspirator Nezer Papraniku ("Papraniku") (identified in the Arrest Warrant as "CC1")[1] and others.  Together with Papraniku, L. Kupa supplied cocaine, which was transported from other states including California, via mail services such as UPS and Federal Express, to cocaine distributors in Staten Island, New York, and elsewhere.  In an effort to conceal their involvement in the cocaine distribution scheme, L. Kupa and Papraniku paid other individuals, often individuals working as doormen in New York City apartment buildings, to accept delivery of the packages containing the cocaine.  After the packages were received, Papraniku would deliver the cocaine to distributors including a cooperating witness ("CW") and a confidential source ("CS") who were involved in distributing between four and eight kilograms of cocaine per month with coconspirators Joseph Sclafani, Neil Lombardo, Afrim Kupa (L. Kupa's brother) and others.[2]  CW and CS have advised that L. Kupa relied on Papraniku and at least one other coconspirator to make the cocaine deliveries, in an apparent effort to avoid detection by law enforcement agents.  Between 2005 and 2011, L. Kupa and Papraniku supplied approximately two kilograms of cocaine to CS and between five and ten kilograms of cocaine to CW.  Moreover, in approximately August 2011, L. Kupa and Papraniku were expecting a shipment of between seven and ten kilograms of cocaine, but the shipment was returned because the individual expected to receive the package was not present when the delivery was attempted by the mail service.

On the day of their arrests, Papraniku was en route to the airport to travel to Arizona.  His bag, which was searched pursuant to an inventory search in accordance with the regular procedures of the Drug Enforcement Administration, contained $20,000 and a UPS receipt for a package that was delivered to Arizona.  The receipt indicated that the package contained a dish set, and the sender was listed as "Joseph Stein," but when the package was searched pursuant to a search warrant obtained in the

---

[1]    On January 16, 2012, Papraniku was also arrested on the same charges pursuant to an arrest warrant authorized by the Honorable Ramon E. Reyes, Jr., on or about January 13, 2012.  A copy of the affidavit in support of the arrest warrant for Papraniku is attached as Exhibit B.

[2]    A. Kupa, Lombardo and Sclafani are indicted for cocaine distribution and cocaine distribution conspiracy in United States v. Afrim Kupa, Keith Levine, Neil Lombardo and Joseph Sclafani, 11 CR 345 (SLT).

District of Arizona on or about January 20, 2012, DEA agents recovered approximately $194,000.

On or about January 30, 2012, a clerk from the location from which the package was shipped identified a photograph of L. Kupa and advised that he had represented himself to be Joseph Stein when he shipped the package described above and at least two others over the past several months.[3]

## II.   Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community."  A finding of dangerousness must be supported by clear and convincing evidence.  United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).  A finding of risk of flight must be supported by a preponderance of the evidence.  United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The factors to be considered in determining whether the applicable standard has been met include: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt.  See Title 18, United States Code, Section 3142(g).  As set forth below, these factors support detention in this case.

## III.  The Defendant Poses a Danger to the Community

### A.   The Nature and Circumstances of the Crimes

As set forth above, L. Kupa is responsible for distributing large quantities of cocaine in Brooklyn, New York, Staten Island, New York, and elsewhere, between approximately 2005 and 2011.  He is charged with conspiracy to distribute and

---

[3]   DEA agents have identified two Federal Express receipts from 2011 listing Joseph Stein as the sender, for packages that were sent to California.  Each receipt describes the contents of the package as some form of dishware.

possess with intent to distribute, over five kilograms of
cocaine, in violation of 21 U.S.C. §§ 841(a),
841(b)(1)(A)(ii)(II) and 846.  This crime carries a mandatory
minimum sentence of ten years' imprisonment and thus, carries a
presumption in favor of detention.  21 U.S.C.
§ 841(b)(1)(A)(ii)(II).[4]  He is also charged with access device
fraud, in violation of 18 U.S.C. § 1029(a)(1), for his role in
producing and selling counterfeit credit cards.

    B.    <u>The Evidence is Strong</u>

        The evidence against L. Kupa includes the testimony of
cooperating witnesses who purchased cocaine from L. Kupa and
Papraniku on multiple occasions between 2005 and 2011 and
received fraudulent credit cards from L. Kupa and Papraniku, or
merchandise purchased with such credit cards.  Their testimony is
corroborated by, among other things, documentary evidence;
physical evidence, including the $194,000 seized from the UPS
shipment described above, wrapping material for cocaine sold to
CS and CW and cocaine seized, pursuant to search warrants issued
in the United States District Court, Eastern District of New
York, from the residences of L. Kupa's coconspirators;
surveillance conducted by law enforcement agents; and consensual
recordings made by CW and CS of L. Kupa's coconspirators.

    C.    <u>The History and Characteristics of the Defendant</u>

        As set forth in the arrest warrant, L. Kupa has a
substantial criminal history that reflects the danger he poses to
the community.  Moreover, L. Kupa has repeatedly violated the
conditions of his supervised release, demonstrating that he can
not be relied upon to abide by any combination of bail conditions
that this Court might set.

        On September 8, 1995, L. Kupa was arrested in Staten
Island, New York, on charges including criminal possession of a
bomb, silencer or machine gun.  He pled guilty on April 25, 1996,
to criminal possession of a weapon in the fourth degree and was
sentenced to three years of probation.  On July 30, 1998, L. Kupa
was indicted in the United States District Court, Southern
District of New York, for conspiracy to defraud the United
States, in violation of 18 U.S.C. § 371, the use of counterfeit
securities, in violation of 18 U.S.C. § 513 and bank fraud, in

_____

     [4]    In addition, information provided by CW and CS indicate
that L. Kupa is also responsible for importing large quantities
of marijuana from states such as Arizona.

violation of 18 U.S.C. § 1344.  United States v. Lulzim Kupa, 98 CR 828 (JSM).  L. Kupa pled guilty to conspiracy to defraud the United States, and, on November 23, 1999, L. Kupa was sentenced to 18 months of incarceration and three years of supervised release.  On February 25, 1999, L. Kupa was indicted in the United States District Court, Eastern District of New York, for charges including racketeering, in violation of 18 U.S.C. § 1962(c), based on his involvement in a series of bank burglaries in which approximately $1,048,182 was stolen.  United States v. Lulzim Kupa, 99 CR 160 (BMC).  He pled guilty on August 19, 1999, and was sentenced on December 8, 1999, to 24 months' incarceration, to run concurrently with the sentence he was serving pursuant to his conviction in the Southern District of New York.  On December 16, 1999, L. Kupa was indicted in a separate case in the United States District Court, Eastern District of New York, for conspiracy to distribute marijuana. United States v. Lulzim Kupa, 99 CR 1146 (CPS).  On December 12, 2000, he was sentenced to 63 months of incarceration, to run concurrently with his other federal sentences and four years of supervised release.  He was released from prison in approximately September 2003.  On December 12, 2006, KUPA was indicted in the United States District Court, Eastern District of New York for conspiracy to distribute marijuana.  United States v. Lulzim Kupa, 06 CR 816 (BMC).  He was sentenced on July 26, 2007, to 30 months' incarceration.  In addition, because this offense violated the terms of the supervised release imposed pursuant to his prior conviction, L. Kupa was sentenced to an additional 24 months' in prison for the violation.  He was released on January 11, 2010.

Upon release, L. Kupa immediately resumed his involvement in criminal activities, including the distribution of large quantities of cocaine, in flagrant violation of the terms of his supervised release.  For example, in February 2011 alone, he sold one kilogram of cocaine to CS and between 2010 and 2011, sold between five and ten kilograms of cocaine to CW.  As set forth above, he also traveled to New York City on at least three occasions to ship narcotics proceeds to suppliers in other states, in violation of the terms of his supervised release, which require him to obtain the permission of his Probation Officer in Connecticut before traveling to New York City.  In the event that L. Kupa is released pending trial in this matter, there is a substantial risk that L. Kupa will continue to engage in the distribution of cocaine and marijuana.  The risk is particularly acute because L. Kupa's suppliers in Arizona and California have not been identified.

D.   The Seriousness of the Danger Posed by
     L. Kupa's Release

        Although L. Kupa is not charged with a crime of
violence, the dangers of the national and international drug
trade and of drug use are beyond question.  In relation to the
Bail Reform Act, Congress noted that defendants pose a danger to
the community not only when they commit acts of violence, but
when it is likely that they will commit even non-violent crimes
that are detrimental to the community.  See Senate Report at 3195
("language referring to safety of the community refers to the
danger that the defendant might engage in criminal activity to
the detriment of the community . . . . The Committee intends that
the concern about safety be given a broader construction than
merely danger of harm involving physical violence").  In light of
that Congressional finding, in United States v. Salerno,  631 F.
Supp. 1364, 1371 (S.D.N.Y. 1986), order vacated, 794 F.2d 64 (2d
Cir.), order reinstated, 829 F.2d 345 (2d Cir. 1987), the court
held:

            In light of Congress' direction that "[w]here
            there is a strong probability that a person
            will commit additional crimes if released,
            the need to protect the community becomes
            sufficiently compelling that detention is, on
            balance, appropriate" . . . .

See also United States v. Colombo, 777 F.2d 96, 99 (2d Cir.
1985).

        If released, it is likely that L. Kupa will continue to
distribute illegal drugs, including large quantities of cocaine,
in order to maintain his lucrative drug trafficking business.
The nature of the operation would permit L. Kupa to continue to
facilitate the importation and distribution of illegal drugs,
even if conditions such as electronic monitoring were to be
imposed.  As set forth above, L. Kupa arranges for the drugs to
be transported through mail services to individuals paid to
accept the deliveries.  Moreover, CW and CS have advised that, in
an effort to avoid the detection of law enforcement agents, L.
Kupa used Papraniku as well as at least one other coconspirator
to deliver the cocaine.  If confined to the home, L. Kupa could
easily rely on this coconspirator and others to distribute the
cocaine after it is delivered by mail to those paid to receive
the packages.  Thus, L. Kupa could continue to facilitate the
scheme by phone, without leaving his residence.  Accordingly,
although he is not charged with a crime of violence, L. Kupa's
release nonetheless poses a danger to the community.

Furthermore, L. Kupa has resorted to violence and threats of violence in the past.  For example, upon his release from prison in 2010, L. Kupa approached CS regarding money CS owed L. Kupa for marijuana L. Kupa had supplied.  L. Kupa demanded that CS pay the debt, and warned CS, in sum and substance, that he [L. Kupa] still had one or two guns lying around.  Moreover, several years earlier, with respect to his convictions in 1999, L. Kupa informed CS that an informant on his case had disappeared, in order to convey to CS the potential consequences of cooperating against him.

IV.  The Defendant Is a Flight Risk

L. Kupa faces a mandatory minimum sentence of ten years because he is responsible for the distribution of well over five kilograms of cocaine.  21 U.S.C. § 841(b)(1)(A)(ii)(II).  Based on the amount of cocaine involved in the offense and L. Kupa's criminal history, L. Kupa's estimated range of imprisonment under the United States Sentencing Guidelines is 360 months to life imprisonment.  The significant sentence he faces gives L. Kupa substantial incentive to flee.  See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).  Furthermore, he has the means to flee, as evidenced by the approximately $194,000 that he and Papraniku delivered through UPS to associates in Arizona.  Moreover, his prior involvement in fraud, including the recent access device fraud, further demonstrates that he has the means and methods to flee.  Finally, even a substantial bail package does not overcome the presumptive risk of flight in this case against the backdrop of the defendant's substantial incentive and ability to flee.

V.   <u>Conclusion</u>

        For all of the foregoing reasons, the Court should
enter a permanent order of detention for the defendant L. Kupa.

                        Respectfully submitted,

                        LORETTA E. LYNCH
                        United States Attorney


                   By:  _____/s/_____
                        Rachel J. Nash
                        (718) 254-6072


cc:  Clerk of Court (by ECF)